UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SECURITIES AND EXCHANGE COMMISSION,

                        Plaintiff,

-against-

ONE WALL STREET, INC., et al.,

                        Defendants,

-and-

LA SHONDRA HATTER,

                        Relief Defendant.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 06-4217 (NGG) (ARL)

**LINDSAY, Magistrate Judge:**

Following the entry of a consent judgment against defendant Alan Brown ("Brown"), District Judge Garaufis referred this matter to the undersigned by for a report and recommendation as to the amount to be disgorged from Brown together with prejudgment interest as well as whether a civil penalty should be imposed, and if so, in what amount. For the reasons set forth below, the undersigned recommends disgorgement in the amount of $95,965 plus prejudgment interest, together with a civil penalty in the amount of $60,000

## PROCEDURAL HISTORY

On May 22, 2007 Judge Garufis entered a Consent Judgment whereby defendant Brown was ordered, among other things, to pay disgorgement of ill-gotten gains and prejudgment interest thereon in an amount to be determined by the court. The judgment provides that prejudgment interest shall be calculated from June 1, 2006 based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C.

§6621(a)(2). See Consent Judgment, dated April 26, 2007, at page 4. Finally, the judgment provides that the court shall determine whether a civil penalty pursuant to Section 20(d) of the Securities Act, 15 U.S.C. §77t(d) and Section 21(d)(3) of the Exchange Act, 15 U.S.C. §78u(d)(3) is appropriate and, if so, the amount of the penalty. Id.

Consistent with the terms of the Consent Judgment, the allegations of the complaint are deemed true for purposes of determining appropriate penalties. The complaint describes that during the years 2003 through 2006, the defendants engaged in a fraudulent scheme to sell One Wall Street securities by means of false and fraudulent representations. The scheme, which targeted senior citizens, raised approximately $1.6 million dollars which was then distributed to the defendants in varying amounts. The defendants collectively induced approximately 31 investors to purchase One Wall Street stock on the basis of false representations. Defendant Brown, who was the Director of Sales, directly solicited at least five investors. (Compl. at ¶¶ 12, 18). The complaint describes three specific instances where Brown induced investors aged 79, 71 and 54 to purchase One Wall Street stock totaling $40,000 by falsely representing that an IPO was imminent which would substantially increase the value of the stock. (Id. at ¶ 18).

Plaintiff seeks judgment against defendant Brown in the amount of $95,965 plus prejudgment interest as well as the imposition of the maximum civil penalty for Brown's violation of the federal securities law. Brown opposes the plaintiff's request, contending that the court should order disgorgement in the amount of $30,000 with prejudgment interest and that no civil monetary penalty be imposed.

## DISCUSSION

A. Disgorgement

In cases involving securities law violations, a "district court has broad equitable power to

fashion appropriate remedies, including ordering that culpable defendants disgorge their profits." SEC v. First Jersey Sec., 101 F.3d 1450, 1474 (2d Cir. 1996) (citing SEC v. Lorin, 76 F.3d 458, 461-62 (2d Cir. 1996) (per curiam); SEC v. Patel, 61 F.3d 137, 139 (2d Cir. 1995); SEC v. Manor Nursing Centers, Inc., 458 F.2d 1082, 1104 (2d Cir. 1972)). "[T]he primary purpose of disgorgement is not to compensate investors. Unlike damages, it is a method of forcing a defendant to give up the amount by which he was unjustly enriched." Commonwealth Chem. Sec., Inc., 574 F.2d at 102; SEC v. Wang, 944 F.2d 80, 81 (2d Cir. 1991). Thus, "disgorgement need only be a reasonable approximation of profits causally connected to the violation . . . [and] any risk of uncertainty . . . should fall on the wrongdoer whose illegal conduct created the uncertainty." SEC v. Patel, 61 F.3d 137, 139-40 (2d Cir. 1995).

Plaintiff asserts that defendant Brown should be ordered to disgorge $95,965 representing the net amount of monies paid to Brown as a result of his association with One Wall Street. The bank account records of One Wall Street reflect that between September 2003 and May 2006, Brown received 18 checks in the total sum of $98,965 and that he returned $3,000 resulting in a net payment of $95,965. (See Decl. of Neil Hendelman and Supporting Documents annexed thereto as Ex. 1-1 - 1-18). The checks to Brown were all deposited to his personal bank accounts. Id.

Brown argues that the amount of disgorgement should correspond only to the fraudulent transactions directly attributed to him in the complaint representing just $30,000. Additionally Brown asserts that approximately $43,000 of the monies paid to him represented mere loans unrelated to any fraudulent conduct and as such should not be considered in determining the amount to be disgorged. For the reasons that follow, Brown's arguments are unavailing.

It is well-settled in this Circuit that "the amount of disgorgement, as an equitable remedy,

is determined by the amount of profit realized by the defendant." SEC v. Absoultefuture.com, 393 F.3d 94, 96 (2d Cir. 2004). While the SEC bears the burden of proving that its disgorgement figure approximates the amount of unjust enrichment, once that burden is met it falls to the defendant to demonstrate that this demand is somehow unreasonable or that he actually received less than the than the amount sought to be disgorged. SEC v. Inorganic Recycling Corp., Civ. 99-10159(GEL), 2002 WL 1968641, *2 (S.D.N.Y Aug. 23, 2002). In addition, "[f]inancial hardship does not preclude the imposition of an order of disgorgement." See, e.g., Inorganic Recycling Corp., 2002 WL 1968641 at *2 ("The fact that swindlers have run through the proceeds of the fraud and are now insolvent should not prevent the imposition of a remedy, since defendant may 'subsequently acquire the means to satisfy the judgment.'") (quoting SEC. v. Grossman, 87 Civ. 1031, 1997 WL 231167, at *10 (S.D.N.Y. May 6, 1997).

The undisputed evidence reflects that Brown received $95,965 in his capacity as Director of Sales at One Wall Street. Brown claims that $43,000 of that sum were loans to him. That assertion, even if true, is of little consequence. One Wall Street's records do not reflect loans to Brown and more importantly there is simply no evidence that Brown re-paid any such loans. In sum, Brown cannot seriously dispute that he received $95,965 representing the proceeds of fraudulent conduct of which he was a part. Accordingly, the undersigned recommends disgorgement in the amount of $95,965.

      B.      Prejudgment Interest

The Consent Judgment entered by District Judge Garaufis includes an award of prejudgment interest on the disgorged sum and directs that prejudgment interest shall be calculated from June 1, 2006 based on the rate of interest used by the Internal Revenue Service for the underpayment of federal income tax as set forth in 26 U.S.C. §6621(a)(2). Accordingly,

the undersigned recommends that prejudgment interest compounded quarterly in the amount of $13,818.15 be awarded covering the period from June 1, 2006 through May 31, 2007, with additional interest to be calculated in the same manner from that date until final judgment is entered.

        C.      Civil Penalty

Finally, in addition to disgorgement, the court may impose civil penalties upon violators of the anti-fraud provisions of the federal securities laws. 15 U.S.C. § 77t(d), 78u(d)(3). Civil penalties are designed to deter securities fraud violations and extract a price beyond the ill-gotten profits that are disgorged. SEC v. Coates, 137 F. Supp.2d 413, 428-29 (S.D.N.Y.2001) (citing H.H. Representation. No. 101-616 (1990)). The statutes provide for three levels or "tiers" of penalties. Under the first tier, the court may impose a penalty of up to the greater of (i) $6,500 for a natural person or $60,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation."15 U.S.C. §§ 77t(d)(2)(A), 78u(d)(3)(B)(i). A second tier penalty is warranted for violations that involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement"and may not "exceed the greater of (i) $60,000 for a natural person or $300,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. §§ 77t(d)(2)(B), 78u(d)(3)(B)(ii).

Here, the SEC seeks a third-tier penalty, which may not exceed the "greater of (i) $120,000 for a natural person or $600,000 for any other person, or (ii) the gross amount of pecuniary gain to such defendant as a result of the violation" if the violation involved "fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons." 15 U.S.C. §§ 77t(d)(2)(C), 78u(d)(3)(B)(iii). While the

plaintiff does not request a specific sum, it urges that the court, in its discretion, impose an appropriate a third-tier penalty because Brown's violation involved fraud creating a substantial loss to each of the three investors he targeted. Brown urges this court to take into consideration his limited financial means in assessing a penalty.

In determining whether civil penalties should be imposed, and the amount of the fine, courts look to a number of factors, including: (1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurrent; (5) whether the defendant has admitted wrongdoing; and (6) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition. See SEC v. Opulentica, LLC, 479 F. Supp.2d 319 (S.D.N.Y. 2007) (citing Coates, 137 F. Supp.2d at 428-29 (listing factors)); see also SEC v. Cavanagh, 2004 WL 1594818, at *31 (S.D.N.Y. July 16, 2004), aff'd on different grounds, 445 F.3d 105 (2d Cir. 2006) (citing SEC v. Lybrand, 281 F. Supp.2d 726, 730 (S.D.N.Y. 2003) (collecting cases). While these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a "discretionary nature" and each case "has its own particular facts and circumstances which determine the appropriate penalty to be imposed." SEC v. Moran, 944 F. Supp. 286, 296-97 (S.D.N.Y. 1996).

Upon consideration of these factors, the court agrees that a third-tier penalty is warranted. The scheme in this case targeted multiple investors including senior citizens who presumably had less ability to recover from their losses. Indeed, all of Brown's direct victims were at or near retirement age and at least one of them has stated that his loss represented a significant part of his life savings. Only about 10% of the $1.6 million dollars defrauded has thus far been recovered

indicating that most of the monies invested in One Wall Street securities is now gone. As set forth in the complaint, Brown repeatedly misrepresented facts to investors to cause them to purchase One Wall Street securities. Moreover, while Brown argues that his financial condition is "dire," his financial statements reflect a net worth of $ 421,146. See Brown's Statement of Assets and Liabilities as of 1/11/07; see also Hendelman Decl. at ¶ 8 with Exhibits 1-2 annexed thereto.

A review of the relevant case law indicates that the amount of the regulatory penalty assessed should have some relationship to the amount of ill-gotten gains. See, e.g., Opulentica, 479 F. Supp.2d at 332; SEC v. Save the World Air, Inc., CV 01-11586(GBD), 2005 WL 3077514, at *20 (S.D.N.Y. Nov. 15, 2005; SEC v. Inorganic Recycling Corp., CV 99-10159(GEL), 2002 WL 1968341, at *3-4 (S.D.N.Y Aug. 23, 2002). The amount of Brown's monetary gain in proportion to the total amount defrauded indicates that he was not a substantial beneficiary of the scheme. Under these circumstances, the court considers a third-tier penalty in the amount of $60,000 to be an appropriate penalty. Thus, the undersigned recommends a civil penalty in the amount of $60,000.

## RECOMMENDATION

For all the reasons set forth above, the undersigned recommends disgorgement in the amount of **$95,965** plus prejudgment interest in the amount of **$13,818.15** plus additional interest to be calculated at the IRS underpayment rate from July 1, 2007 through final judgment and the imposition of a civil penalty in the amount of **$60,000.**

A copy of the Report and Recommendation is being sent to the plaintiff. The plaintiff is directed to serve the defendants with a copy by certified mail, return receipt requested, and to file proof of service with the court. Any objections to this Report and Recommendation must be

filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of service. Failure to file objections within this period waives the right to appeal the District Court's Order. See 28 U.S.C. §636 (b) (1); Fed. R. Civ. P. 72; Beverly v. Walker, 118 F.3d 900, 902 (2d Cir. 1997); Savoie v. Merchants Bank, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
December 12, 2007

/s/
ARLENE ROSARIO LINDSAY
United States Magistrate Judge